

JUDGE KATHLEEN CARDONE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

PAOLA DOMINGUEZ,

        *Plaintiff,*

v.

LAKE LAW FIRM, LLC a New York limited
liability corporation and CONSUMER JUSTICE
GROUP, an unknown entity
        *Defendants.*

EP23CV0260

## COMPLAINT

Plaintiff, PAOLA DOMINGUEZ, brings this action against Defendant LAKE LAW FIRM, LLC and Defendant CONSUMER JUSTICE GROUP, and alleges based on personal knowledge, information and belief, as follows:

### PRELIMINARY STATEMENT

1.    As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. . . For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Pol. Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

2.    Plaintiff Paola Dominguez ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, alleging that Defendant LAKE LAW FIRM, LLC and Defendant Consumer Justice Group sent a series of telemarketing calls for the purposes of

1

commercial solicitation by contacting Plaintiff's cellular telephone number listed on the National Do-Not-Call Registry, which is prohibited by the TCPA.

3. Plaintiff never consented to receive any of these phone calls, which were placed to her for telemarketing purposes.

## PARTIES

4. Plaintiff PAOLA DOMINGUEZ ("Plaintiff") is a natural person, who resides in El Paso, Texas, is a citizen of the State of Texas, and was the individual who received the alleged phone calls in this case on her private cell phone, and was a resident of Texas during the calls, in this case in El Paso County, Texas.

5. Defendant LAKE LAW FIRM, LLC ("Lake") is a limited liability company organized and existing under the laws of New York and can be served via registered agent Mary F. Balthasar Lake at 30 Woodshire North, Getzville, NY 14068.

6. Defendant CONSUMER JUSTICE GROUP LLP ("CJG"), an unknown business entity.

## JURISDICTION AND VENUE

7. This Court has federal question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Ser's., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 302.101 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case.

8. **Personal Jurisdiction**. This Court has specific personal jurisdiction over Defendants because they have repeatedly placed calls to Texas residents, the phone calls were purposefully directed into this forum, and Defendants perform legal representation in this forum.

9.    **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims the calls and sale of goods and services directed at Texas residents, including Plaintiff occurred in this District and because Plaintiff was residing in the Western District of Texas when she received a substantial if not every single call from Defendants that are the subject matter of this lawsuit.

Statutory Background

The Telephone Consumer Protection Act

10.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing ... can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Automated Telemarketing Calls

11.    The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service ... or any service for which the called party is charged for the call." See 47 U.S.C. § 227(b)(1)(A)(iii).

12.    The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). See 47 U.S.C. § 227(b)(3).

13.    Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

---

[1] See Code of Federal Regulation, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

3

14.     The TCPA provides a private right of action to persons who received calls in violation of 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

15.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

16.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

17.     In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]" In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

<u>The National Do-Not-Call Registry</u>

18.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the

registration is cancelled by the consumer or the telephone number is removed by the database administrator." Id.

**19.** The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

**20.** The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

<u>The Texas Business and Commerce Code § 302.101</u>

**21.** The Texas Business and Commerce Code requires sellers to obtain a registration certificate from the Secretary of State to make telephone solicitations inside the state of Texas or to residents in the state of Texas.

**22.** Plaintiff may seek damages for violations of Texas Business and Commerce Code § 302.101 of up to $5,000 per violation, reasonable costs of prosecuting the action, court costs, investigation costs, depositions expenses, witness fees, and attorney's fees.

**23.** Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code §302.303.

## FACTUAL ALLEGATIONS

**24.** Defendant Lake is a law firm that specializes in personal injury and provides its services across the country, including Texas.

**25.** Plaintiff is the subscriber of a cell phone ending in 6911.

26. Plaintiff's cell phone number is not associated with any business, and she uses it as one would use a home landline phone number.

27. Plaintiff personally registered her cell phone ending in 6911 on the National Do-Not-Call Registry on January 16, 2022.

28. Plaintiff registered her phone number on the Do-Not-Call list in order to obtain solitude from invasive and harassing telemarketing calls. The telemarketing calls at issue in this Complaint prevented Plaintiff from using her phone for personal reasons.

29. Plaintiff received at least seventeen (17) telemarketing calls soliciting legal representation between May 19, 2023, and May 24, 2023, to her personal cell phone number, without her prior express written consent and not related to an emergency purpose.

30. **Call 1:** On May 19, 2023, Plaintiff received a phone call that displayed 915-331-6148 on the caller identification. Plaintiff answered the phone and a representative named "Jonathan" solicited Plaintiff for Camp Lejeune representation. Plaintiff hung up the phone as she did not need the service.

31. **Call 2:** On May 19, 2023, Plaintiff received another phone call that displayed 443-383-9083 on the caller identification. Plaintiff answered the phone and a representative named "Kevin" stated he was following up the conversation Plaintiff had with representative Jonathan even though Plaintiff told Jonathan not to call her.

32. In order to have written documentation on whose behalf Jonathan and Kevin were calling on, Plaintiff went through the qualifying process but ended up telling the representative to never call her again because Kevin could not provide the retainer at that time.

33. Without any prompting, Plaintiff received a retainer displaying "Titan Law Group and The Lake Law Firm" at the top the next day on May 22, 2023, at 8:39 AM.

6

34. In the retainer Plaintiff received under the paragraph titled "Associate Counsel" it states, "The attorneys' fees will be divided among the attorneys as follows: Milberg Coleman Bryson Phillips Grossman, LLC: 15%; Titan Law Group: 1%; and The Lake Law Firm: 84%." The majority percentage is implying that Defendant Lake is the mastermind behind the orchestrated calls made to Plaintiff.

35. On information and belief, Defendant Lake and Titan Law Group work as a common enterprise as they share the same place of business, phone number, and appear on the same camp lejeune retainer as one.

36. **Calls 3-13:** Plaintiff was away from her phone and discovered 11 missed calls in the span of 6 hours all from phone number 667-241-9190 on May 22, 2023, as seen below on Table A.

37. **Call 14:** On May 22, 2023, Plaintiff received a phone call that displayed 628-232-5466 on the caller identification. Plaintiff answered the phone and found herself speaking to the same representative, Kevin, as in paragraph 29 who disclosed to Plaintiff he was calling on behalf of an intake center called "Consumer Justice Group."

38. **Call 15:** On May 23, 2023, Plaintiff received a call from phone number 667-241-9190, the same number who called Plaintiff in paragraph 32. It was representative Kevin calling from Consumer Justice Group on behalf of Defendant Lake being very persistent in signing Lake's retainer even after being told not to call again.

39. The following is a table detailing the telephone calls sent by Defendants to Plaintiff's cell phone number:

TABLE A

| Call: | Date: | Caller ID: | Time: | Notes: |
|---|---|---|---|---|
| 1 | 5/19/2023 | 915-331-6148 | 4:00 PM | Unsolicited call from Agent Jonathan |
| 2 | 5/19/2023 | 443-383-9083 | 4:36 PM | Agent Kevin, DNC request |
| 3 | 5/22/2023 | 667-241-9190 | 8:44 PM | Missed phone call |

| 4 | 5/22/2023 | 667-241-9190 | 8:45 PM | Missed phone call |
| 5 | 5/22/2023 | 667-241-9190 | 8:46 PM | Missed phone call |
| 6 | 5/22/2023 | 667-241-9190 | 9:02 AM | Missed phone call |
| 7 | 5/22/2023 | 667-241-9190 | 9:15 AM | Missed phone call |
| 8 | 5/22/2023 | 667-241-9190 | 1:02 PM | Missed phone call |
| 9 | 5/22/2023 | 667-241-9190 | 1:03 PM | Missed phone call |
| 10 | 5/22/2023 | 667-241-9190 | 1:35 PM | Missed phone call |
| 11 | 5/22/2023 | 667-241-9190 | 1:35 PM | Missed phone call |
| 12 | 5/22/2023 | 667-241-9190 | 2:27 PM | Missed phone call |
| 13 | 5/22/2023 | 667-241-9190 | 2:27 PM | Missed phone call |
| 14 | 5/22/2023 | 628-232-5466 | 2:42 PM | Agent Kevin, disclosed Consumer Justice Group |
| 15 | 5/23/2023 | 667-241-9190 | 10:04 AM | DNC request to Agent Kevin |
| 16 | 5/23/2023 | 615-680-1629 | 10:34 AM | Agent Jonathan, DNC request |
| 17 | 5/24/2023 | 667-241-9190 | 9:38 AM | Agent Jonathan, DNC request |

**40.** On May 23, 2023, Plaintiff conducted a search for Defendant Lake and CJG on https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp, and neither Defendant had a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents. Plaintiff is a Texas resident.

**41.** Defendant Lake or CJG did not have Plaintiff's prior express written consent to make any of these telemarketing calls.

**42.** Prior to these unsolicited telephone communications, Plaintiff has never done any business with either Defendant, or has never provided either Defendant with her cellular telephone number.

**43.** Plaintiff has never searched or asked for information regarding Camp Lejeune or have a family member who served or lived at Camp Lejeune.

**44.** Plaintiff received the calls on her cell phone, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii).

**45.** Defendants are not an organization exempt from the TCPA.

**46.** Defendants' calls to Plaintiff were "telephone solicitations" as defined by the TCPA.

47.     Defendants' calls to Plaintiff were "unsolicited advertisements" as defined by the TCPA.

48.     Defendant Lake is a law firm well aware of the regulations regarding the TCPA and the ethical prohibition surrounding unsolicited direct advertising to consumers with whom no preexisting relationship exists.

49.     Lake made the conscious decision to ignore the law and their ethical guidelines in pursuit of economic gain and each and every phone call placed by Defendant Lake was a knowing and willful violation of the TCPA and TBCC.

50.     In summary, Plaintiff received seventeen (17) telemarketing calls from Defendants to Plaintiff's personal cell phone number which is registered on the National Do-Not-Call list.

51.     Plaintiff made several do not call requests therefore Defendants calls were made knowingly and willfully.

52.     No emergency necessitated the calls.

## DEFENDANT LAKE IS LIABLE FOR THE PHONE CALLS PLACED BY CONSUMER JUSTICE GROUP

53.     Defendant Lake is "vicariously liable" under federal common law principles of agency for TCPA violations committed by third-party telemarketers," such as Defendant CJG.  In re Joint Pet. filed by Dish Network, LLC, 28 F.C.C.R. 6574, 6582 (2013).

54.     Defendant Lake markets legal representation through direct telephone solicitation by Defendant CJG, who acts on its behalf. CJG transfers live, hot leads to Lake and Lake accepts the leads. CJG was Lake's agent when it made the prohibited calls to Plaintiff on its behalf, and with the actual authority from, CJG pursuant to a contract that governs John Doe's telemarketing for Lake.

55. Defendant Lake directs, controls, authorizes, and pays Defendant CJG to generate live-transfer leads for Defendant Lake's legal services through telephone solicitation. Moreover, it requires, authorizes, or at least permits CJG to solicit explicitly for Camp Lejeune representation.

56. Defendant Lake sets the criteria for qualifying leads, which CJG must follow/ Defendant CJG live-transfers leads qualified on those criteria exclusively to Lake. Plaintiff is unaware of the qualifying thresholds, but the salient question is whether the potential client was stationed at Camp Lejeune, when they were stationed at Camp Lejeune, and whether there was some type of cancer or physical impairment that manifested as a result of the Camp Lejeune residency.

57. On information and belief, Lake writes or at least approves the call script CJG uses when qualifying leads for Lake.

58. Defendant CJG is Lake's associate who does nothing to disturb the impression that CJG works for, and speaks and acts on behalf of, Lake.

59. From CJG's initial call to Defendant Lake's acceptance of a completed representation application, the telemarketing of Lake's legal representation constitutes a singular, coordinated marketing effort devised, authorized, directed, and controlled by Lake, the principal, with CJG acting as Lake's agent.

60. Defendant CJG, acting with actual authority, made the prohibited calls, qualified Plaintiff according to Lake's criteria, and then live-transferred Plaintiff to Lake's advisor to continue marketing legal representation.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES AS A RESULT OF THE CALLS

61. Defendant's calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

62. Defendant's calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

63. Defendant's calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

64. Defendant's calls reduced Plaintiff's storage, reduced Plaintiff's data plan, and angered, and frustrated Plaintiff.

## VIOLATIONS OF THE TEXAS BUSINESS AND COMMERCE CODE § 302.101

65. Defendant's actions violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having registration certificate and bond on file with the Texas Secretary of State.

66. Plaintiff may seek damages for violations of Texas Business and Commerce Code § 302.101 of up to $5,000 per violation, reasonable costs of prosecuting the action, court costs, investigation costs, depositions expenses, witness fees, and attorney's fees.

67. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

68. The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

## TREBLE DAMAGES

69. Plaintiff believes the record shows that Defendants' violations of the law were willful or knowing. Plaintiff was or should have already been on Defendant CJG's internal do-not-call list before they ever called her the first time. The Defendants failed to properly identify themselves,

11

robocalled without consent or checking if Plaintiff's number was on the National do-not-call registry, and generally ignored the law.

## CAUSES OF ACTION

### I. FIRST CLAIM FOR RELIEF

**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. § 227(c) et seq.)**

70. Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation in paragraphs 1-67.

71. Defendants called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

72. Plaintiff was statutorily damaged at least seventeen (17) times under 47 U.S.C. § 227(c)(3)(F) by Defendants' telephone calls described above, in the amount of $500.00 per call.

73. Plaintiff was further statutorily damaged because Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful or knowing violation.

74. As a result of Defendants' violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2), Plaintiff seeks $500 in statutory damages, or $1,500.00 if trebled, for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

75. Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## II. SECOND CLAIM FOR RELIEF

### (Violations of The Texas Business and Commerce Code 302.101)

76. Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation in paragraphs 1-67.

77. The foregoing acts and omissions of Defendants

78. and/or their affiliates or agents constitute multiple violations of the Texas Business and Commerce Code 302.101, by making non-registered solicitation calls to Plaintiff's cellular telephone number without her prior express written consent.

79. Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. Texas Business and Commerce Code 302.302(a).

80. Plaintiff is entitled to an award for all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees and attorney's fees. Texas Business and Commerce Code 302.302(d).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Paola Dominguez prays for judgment against Defendant jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOES as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendant violate the TCPA and Texas state law;

C. An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.An award of $1,500 per call in statutory damages arising from the TCPA § 227(b) intentional violations jointly and severally against the corporation for (5) calls;

E.An award of $1,500 in statutory damages arising from five (5) violations of the Texas Business and Commerce code 302.101.

F.An award to Plaintiff of damages, as allowed by law under the TCPA;

G.An award to Plaintiff of pre-judgment and post-judgment interest, and costs, as allowed by law and equity;

H.Such further relief as the Court deems necessary, just, and proper.

July 10, 2023,Respectfully submitted,

*(signature)*

Paola Dominguez
2316 Bill Howard Pl.
El Paso, TX 79936
915-383-6911
pdomin14@gmail.com
*Plaintiff Pro Se*